2013 UT App 32

# THE UTAH COURT OF APPEALS

DAVID LEE LAMOREAUX,

*Plaintiff and Appellant,*

*v.*

BLACK DIAMOND HOLDINGS, LLC,

*Defendant and Appellee.*

Opinion
No. 20110786-CA
Filed February 7, 2013

Fifth District, St. George Department
The Honorable Eric A. Ludlow
No. 080500885

Michael W. Park, Attorney for Appellant
David L. Elmont and R. Daren Barney,
Attorneys for Appellee

JUDGE WILLIAM A. THORNE JR. authored this Opinion,
in which JUDGES JAMES Z. DAVIS
and MICHELE M. CHRISTIANSEN concurred.

THORNE, Judge:

¶1     David Lee Lamoreaux appeals from the district court's order dismissing this action, which Lamoreaux originally initiated against Black Diamond Holdings, LLC (Black Diamond) in 2008. After a bench trial but before any ruling on the merits, Black Diamond purchased Lamoreaux's interest in the action at a judicial sale and successfully moved to be substituted as the party plaintiff. Black Diamond then filed a motion to dismiss the action in its

capacity as the plaintiff, which the district court granted. We affirm.


BACKGROUND

¶2     In April 2006, Black Diamond entered into a real estate sales listing agreement with Prudential Cedar City Realty (Prudential), whereby Prudential agreed to market and sell a subdivision owned by Black Diamond. The listing agreement named Lamoreaux as the seller's agent, and Lamoreaux signed the agreement as Prudential's "Principal/Branch Broker." The agreement provided for a sales commission of 8% of the selling price, and Prudential ultimately brokered a sale for between eight and ten million dollars. When Black Diamond failed to pay Lamoreaux the full amount that he believed he was entitled to under the agreement, Lamoreaux brought this action against Black Diamond for breach of contract in March 2008 (the Black Diamond action). Lamoreaux's complaint sought a determination of the amount of the 8% sales commission and a judgment for that amount, less $150,000 already paid, plus attorney fees and prejudgment interest.[1] The district court conducted a two-day bench trial on Lamoreaux's claim on February 16 and 17, 2011. At the conclusion of trial, the district court directed both parties to submit proposed findings of fact and orders by April 1, 2011, at which time it would take the matter under advisement and issue a written decision.

¶3     In a separate action (the Fisher action), Darwin and Cheryl Fisher obtained a judgment against Lamoreaux in February 2010 in the amount of $16,484.96. On January 19, 2011, pursuant to their judgment, the Fishers obtained a writ of execution against

---

[1]The listing agreement contained an attorney fees provision. Lamoreaux retained his counsel in the Black Diamond action on a contingency fee basis, with counsel to be paid a percentage of any amount ultimately recovered.

Lamoreaux's interest in the Black Diamond action.[2] The Fishers publicly noticed a judicial sale and personally served Lamoreaux with notice on February 16, 2011. Despite this notice, Lamoreaux did not file a reply or an objection in either the Fisher action or the Black Diamond action. Lamoreaux and his counsel attended the March 21, 2011 sale and attempted to stop the proceedings by declaring that Lamoreaux had transferred his interest in the Black Diamond action. Nevertheless, the sale took place, and Black Diamond submitted the highest bid in the amount of $17,383.78. That same day, Black Diamond filed a motion to substitute in as party plaintiff in the Black Diamond action.

¶4    Lamoreaux opposed Black Diamond's motion to substitute, alleging for the first time in any court that he had transferred his interest in the Black Diamond action to his son prior to being served with notice of the Fishers' writ. Lamoreaux also argued that Utah no longer allowed execution against choses in action following the 2004 repeal of rule 69 of the Utah Rules of Civil Procedure. The district court rejected Lamoreaux's arguments and granted the substitution on August 11, 2011, concluding that the execution and sale of choses in action is still permitted by Utah law and that Lamoreaux could not collaterally attack the results of the Fisher action in the Black Diamond action. Having been substituted as the plaintiff, Black Diamond then sought dismissal of the Black

---

[2]The Fishers' writ, as well as the subsequent notice of sale, contained the following property description:

> All claims, counterclaims, causes of action, choses in action, rights to payment, and rights to compensation and/or damages of every kind and nature, which David Lamoreaux may have against Black Diamond Holdings LLC, including, but not limited to, all such claims and causes of action asserted in the complaint dated March 31, 2008, and filed in the Fifth Judicial District Court with the civil case number of 080500885.

Diamond action, which the district court granted over Lamoreaux's objection on September 23. Lamoreaux appeals.


ISSUES AND STANDARDS OF REVIEW

¶5     Lamoreaux first challenges Black Diamond's purchase of his claim against Black Diamond, arguing that Utah law no longer allows the execution and sale of choses in action and that he should have been granted an evidentiary hearing on his allegation that he had transferred his interest in the Black Diamond action prior to the execution and sale. "The district court's interpretations of Utah statutes and rules of procedure are questions of law reviewed for correctness." *In re Irrevocable Jack W. Kunkler Trust A*, 2011 UT 7, ¶ 13, 246 P.3d 1184.

¶6     Next, Lamoreaux argues that the district court erred when it allowed Black Diamond to substitute in as the plaintiff in the Black Diamond action. We review the district court's substitution ruling only for an abuse of discretion. *See* Utah R. Civ. P. 25(c) ("In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action . . . ."); *cf. Lundahl v. Quinn*, 2003 UT 11, ¶ 10, 67 P.3d 1000 (per curiam) ("While rule 25(c) speaks in permissive rather than mandatory terms, it is clear courts cannot be compelled to recognize a substitution of parties at the whim of the movant.").

¶7     Finally, Lamoreaux argues that the district court erred by failing to render a decision on the merits and instead dismissing the action upon Black Diamond's motion. We review the district court's case management decisions and rulings on voluntary dismissals under an abuse of discretion standard. *See Murray First Thrift & Loan Co. v. Benson*, 563 P.2d 185, 186 (Utah 1977) (stating that the district court has "reasonable discretion in the matter of [voluntary] dismissals"); *Posner v. Equity Title Ins. Agency, Inc.*, 2009

UT App 347, ¶ 23, 222 P.3d 775 ("[T]rial courts have broad discretion in managing the cases assigned to their courts.").

## ANALYSIS

¶8     Lamoreaux's multiple issues on appeal fall into three distinct categories: those challenging the execution and sale of his claim against Black Diamond, those challenging the district court's substitution order, and those challenging the district court's order of dismissal. We address Lamoreaux's arguments within this chronological framework.

### I. Execution and Sale

¶9     On appeal, Lamoreaux raises two arguments challenging the validity of Black Diamond's purchase of his interest in the Black Diamond action. First, Lamoreaux argues that rule 69 of the Utah Rules of Civil Procedure was repealed in 2004 and that the replacement provisions do not allow the execution and sale of choses in action. Second, he argues that the district court erred in failing to hold an evidentiary hearing on his claim that he had transferred his cause of action against Black Diamond prior to the execution and sale.

¶10     Lamoreaux first argues that, in light of the repeal of rule 69, the execution and sale of a cause of action is no longer permitted and that any such execution and sale is void under the Utah Rules of Civil Procedure. The Utah Supreme Court has ruled, as recently as 2002, that choses in action are subject to execution and sale. In *Applied Medical Technologies, Inc. v. Eames*, 2002 UT 18, 44 P.3d 699, the supreme court stated, "Given that choses in action are amenable to execution under rule 69(f), it follows that a defendant can purchase claims, i.e., choses in action, pending against itself and then move to dismiss those claims." *Id.* ¶ 13; *see also Snow, Nuffer, Engstrom & Drake v. Tanasse*, 1999 UT 49, ¶ 9, 980 P.2d 208 ("[W]e hold that a legal malpractice claim, *like any other chose in*

*action*, may ordinarily be acquired by a creditor through attachment and execution." (emphasis added)).

¶11   However, as Lamoreaux correctly points out, *Applied Medical Technologies* was decided under the now-repealed rule 69. Lamoreaux argues that *Applied Medical Technologies* is no longer good law in light of the 2004 repeal of rule 69. We disagree, as we conclude that choses in action remain "amenable to execution" under the current Rules of Civil Procedure. *See Applied Med. Techs.*, 2002 UT 18, ¶ 13. We reach this conclusion by comparing the relevant language of rule 69 with the corresponding provisions of the current rules.

¶12   Rule 69 governed the procedures relating to writs of execution and provided that such writs were "available to a judgment creditor to satisfy a judgment or other order requiring the delivery of property or the payment of money by a judgment debtor." Utah R. Civ. P. 69(a) (2003). The rule contained an internal definition of property subject to execution: "A writ of execution may be used to levy upon all of the judgment debtor's personal property and real property which is not exempt from execution under state or federal law." *Id.* R. 69(b). Rule 69(f) expressly referred to choses in action in its provisions for service of a writ, stating that

> [u]nless the execution otherwise directs, the officer must execute the writ against the non-exempt property of the judgment debtor by levying on a sufficient amount of property, if there is sufficient property; collecting or selling the *choses in action* and selling the other property in the manner set forth herein.

*Id.* R. 69(f) (emphasis added).

¶13   In 2004, rule 69 was repealed and replaced by multiple new rules, including rules 64 and 64E. *See id.* R. 64 (2012) ("Writs in

general.");*id.* R. 64E ("Writ of execution."). Rule 64E states, "A writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money." *Id.* R. 64E(a). "Property," for purposes of rule 64E, "means the defendant's property of any type not exempt from seizure. Property includes but is not limited to real and personal property, tangible and intangible property, the right to property whether due or to become due, and an obligation of a third person to perform for the defendant." *Id.* R. 64(a)(9); *see also id.* R. 64(a) (providing definitions for terms "[a]s used in Rules 64, 64A, 64B, 64C, 64D, 64E, 69A, 69B, and 69C"). The current rules contain no single provision directly comparable to the former rule 69(f) and make no express reference to choses in action, in any context.

¶14     Lamoreaux argues that the amendment of the rules to omit the reference to choses in action indicates an intent to prohibit their execution and sale. Lamoreaux is correct that the removal of a term from a definition is often intended to remove the excluded term from the definition. *See T-Mobile USA, Inc. v. Utah State Tax Comm'n*, 2011 UT 28, ¶ 27, 254 P.3d 752 ("As part of our plain language analysis, we place significance on the removal of a term from a piece of legislation."); *Sindt v. Retirement Bd.*, 2007 UT 16, ¶ 13, 157 P.3d 797 (noting that the legislature's removal of the term "constable" was indicative of its intent to remove "constable" from the definition of public officer). However, the plain language of both rule 69 and the current rules demonstrates that such a result is not appropriate here.

¶15     Even under rule 69, the *definition* of executable property never expressly included choses in action. Rather, rule 69 allowed execution against "all of the judgment debtor's personal property and real property which is not exempt from execution under state or federal law." Utah R. Civ. P. 69(b) (2003). The supreme court has repeatedly found that definition broad enough to include choses in action. *See Applied Med. Techs., Inc. v. Eames*, 2002 UT 18, ¶ 13, 44 P.3d 699; *Snow, Nuffer, Engstrom & Drake v. Tanasse*, 1999 UT 49, ¶ 9,

980 P.2d 208. Rule 69's only express reference to choses in action appeared in rule 69(f), governing the service of writs of execution.

¶16    Under the current rules, the definition of property subject to execution is even broader, encompassing "the defendant's property of any type not exempt from seizure" and including "real and personal property, tangible and intangible property, the right to property whether due or to become due, and an obligation of a third person to perform for the defendant." Utah R. Civ. P. 64(a)(9) (2012). Choses in action have been identified as a type of intangible property, which is included within the current definition. *See Bagford v. Ephraim City*, 904 P.2d 1095, 1098 (Utah 1995) ("[I]ntangible property, such as choses in action, patent rights, franchises, charters or any other form of contract, are within the scope of [eminent domain] . . . as fully as land or other tangible property." (second alteration in original) (citation and internal quotation marks omitted)). In light of the current broad definition of property subject to execution, we conclude that choses in action remain "amenable to execution" under the Utah Rules of Civil Procedure. *See Applied Med. Techs.*, 2002 UT 18, ¶ 13. Accordingly, we reject Lamoreaux's argument that the repeal of rule 69 precluded Black Diamond's purchase of his interest in the Black Diamond action at execution sale.

¶17    We next turn to Lamoreaux's second argument, that he was improperly denied an evidentiary hearing on his claim that he had transferred his cause of action against Black Diamond to his son prior to the execution sale. We agree with the district court that any dispute about the ownership of Lamoreaux's interest in the Black Diamond action was required to be litigated by Lamoreaux or his son by replying to the writ in the Fisher action.

¶18    Rule 64E provides the procedure for a defendant to challenge a writ of execution: "The defendant may reply to the writ and request a hearing. The reply shall be filed and served within 10 days after service of the writ and accompanying papers upon the defendant." Lamoreaux failed to challenge the writ by replying to

it in the Fisher action. Further, to the extent that Lamoreaux's son's interests are even relevant to this matter,[3] third parties are also required to assert their interests by replying to a writ. Rule 64(e)(1) provides that

> [a]ny person claiming an interest in the property has the same rights and obligations as the defendant with respect to the writ and with respect to providing and objecting to security. . . . Any claimant not named by the plaintiff and not served with the writ and accompanying papers may exercise those rights and obligations at any time before the property is sold or delivered to the plaintiff.

*Id.* R. 64(e)(1). Thus, while Lamoreaux's son may not have been bound by the ten-day limitation of rule 64E(d)(1), he was still required to reply to the writ before Lamoreaux's claim was sold, and he failed to do so. We agree with the district court's ultimate conclusion that there is "no support for the proposition that merely having [Lamoreaux] and his counsel appear at the public auction and orally assert that [Lamoreaux] no longer owned the claims is sufficient to satisfy the requirements of Rules 64 and 64E."

¶19 We conclude that the Utah Rules of Civil Procedure continue to allow the execution and sale of causes of action even after the repeal of rule 69. We also agree with the district court that Lamoreaux's attack on the circumstances surrounding the execution and sale of his claim against Black Diamond was required to be raised and litigated in the Fisher action. For these reasons, we affirm the district court's conclusion that the execution and sale of Lamoreaux's cause of action was valid.

---

[3]Lamoreaux's son has not intervened in this action or, to our knowledge, made any other attempt to secure his alleged interest.

II. Substitution of Black Diamond as Party Plaintiff

¶20    Lamoreaux next argues that the district court erred when it allowed Black Diamond to substitute in as the party plaintiff. Lamoreaux acknowledges that substitution rulings are discretionary with the district court but argues that the district court abused its discretion in this case.[4] We address this argument in light of our conclusion that Black Diamond had validly purchased Lamoreaux's interest in the Black Diamond action at the time of the substitution ruling.

¶21    Rule 25 of the Utah Rules of Civil Procedure states, "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Utah R. Civ. P. 25(c). Lamoreaux argues that the plain language of the rule contemplates that actions may be continued by the original party despite a transfer of interest. However, the rule also clearly allows a court to substitute the transferee into the action.

¶22    We see no abuse of the district court's discretion here. Black Diamond had lawfully purchased Lamoreaux's cause of action, and it had filed a motion as the new owner asking to be substituted into the Black Diamond action in Lamoreaux's place. As the Utah Supreme Court has explained,

> [a]fter claims have been sold, a new party steps into the shoes of the former plaintiff, and the claims remain cognizable, but the sale cuts off the former

---

[4]Lamoreaux also argues that substitution should not have occurred prior to the entry of a ruling on the merits of the Black Diamond action. We address the district court's failure to issue a ruling on the merits in our analysis of the district court's dismissal order.

> plaintiff's right to pursue those claims. Once acquired by another, the new litigant has the right to determine the course and scope of the litigation of the claims purchased, including the right to move to dismiss the pending claims.

*Applied Med. Techs., Inc. v. Eames*, 2002 UT 18, ¶ 17, 44 P.3d 699 (citations omitted). The district court's substitution order merely recognized Black Diamond's newly-acquired status as the owner of Lamoreaux's cause of action and did so within the bounds of the authority granted by rule 25. Seeing no abuse of discretion by the district court, we affirm its substitution of Black Diamond for Lamoreaux as plaintiff in this case.

## III. Dismissal

¶23 Finally, we turn to an examination of the district court's order of dismissal.[5] Lamoreaux argues that the district court should not have dismissed the case without ruling on the merits of his—now Black Diamond's—claims. Lamoreaux argues that the district court failed to make a prompt decision on the merits after taking the case under advisement on February 17, 2011, and that the failure to enter a ruling on the merits defeated Lamoreaux's counsel's contractual right to a contingency fee. We affirm the district court's dismissal order.

¶24 Lamoreaux first argues that the district court erred in failing to issue a ruling on the merits of the Black Diamond action within a reasonable time after taking the matter under advisement.

---

[5] In light of the district court's substitution order, we recognize the possibility that Lamoreaux lacks standing to challenge the district court's dismissal order because he was no longer a party when the dismissal order was entered. However, Black Diamond does not argue the standing issue, and we proceed to address Lamoreaux's arguments on their merits.

Lamoreaux's argument misreads the district court's orders at the February 17 conclusion of trial. The district court did not take the matter under advisement on that day, but rather ordered the parties to submit proposed findings and orders no later than April 1, *at which time* it would take the matter under advisement. Black Diamond purchased Lamoreaux's cause of action and filed its motion for substitution on March 21, prior to the deadline for proposed findings and before the district court had taken the matter under advisement. Once the district court became aware that Black Diamond had purchased the cause of action and was seeking substitution—and, presumably, the ultimate dismissal of the action— the court reasonably refrained from expending further judicial resources on crafting a ruling. We see no abuse of the district court's discretion in relation to the timing of the August 11 substitution order and the September 23 dismissal order vis-a-vis its failure to issue a ruling on the merits. *See generally Posner v. Equity Title Ins. Agency, Inc.*, 2009 UT App 347, ¶ 23, 222 P.3d 775 ("[T]rial courts have broad discretion in managing the cases assigned to their courts.").

¶25   Lamoreaux also argues that the district court's failure to issue a ruling on the merits effectively precluded his counsel from receiving compensation under counsel's contingency fee agreement with Lamoreaux. Lamoreaux directs us to a Louisiana case for the proposition that a client may discharge his contingency fee counsel at any time but must pay counsel for services actually rendered. *See Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102 (La. 1978). Lamoreaux further argues that Utah law provides for contingency fee attorneys to be paid on a quantum meruit basis when the contingency fee agreement becomes unenforceable. *See Parents Against Drunk Drivers v. Graystone Pines Homeowners' Assoc.*, 789 P.2d 52, 56–58 (Utah Ct. App. 1990).

¶26   To the extent that Lamoreaux argues that his counsel has some right to be paid for services rendered, counsel's client—Lamoreaux—was no longer a party to the action at the time the district court was considering dismissal, and counsel made no

attempt to intervene in the action. Arguments pertaining to counsel's right to payment were therefore not properly before the district court at the time of dismissal. Accordingly, we will not disturb the district court's dismissal order on the basis of Lamoreaux's argument that the court's failure to issue a ruling on the merits of the Black Diamond action interfered with his counsel's right to payment.

CONCLUSION

¶27 We reject Lamoreaux's challenges to the execution and sale of his cause of action against Black Diamond, the substitution of Black Diamond into the Black Diamond action as the party plaintiff, and the district court's ultimate dismissal of the action on Black Diamond's motion. We conclude that the current Utah Rules of Civil Procedure continue to allow execution against choses in action. We also conclude that Lamoreaux was required to assert the alleged divestiture of his interest by replying to the writ in the Fisher action. Because Black Diamond's purchase of Lamoreaux's cause of action was valid, the district court did not abuse its discretion in substituting Black Diamond for Lamoreaux as plaintiff and ultimately dismissing the action. Affirmed.[6]

_____

---

[6]Black Diamond requests that we order Lamoreaux's counsel to personally pay a portion of Black Diamond's attorney fees incurred on appeal. We decline to award any fees in this matter.