**2023 UT App 114**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF R.G.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

M.M.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20220629-CA
Filed September 28, 2023

Second District Juvenile Court, Ogden Department
The Honorable Tasha Williams
No. 1183589

Colleen K. Coebergh, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and AMY J. OLIVER concurred.

CHRISTIANSEN FORSTER, Judge:

¶1   M.M. (Mother) appeals the juvenile court's order terminating her parental rights to R.G. (Child). Mother argues she received ineffective assistance of counsel because the court would not allow her lawyer (Counsel) to withdraw from representing her at trial despite the fact that Mother did not appear at trial. Mother has not persuaded us that the court was wrong to deny Counsel's motion to withdraw or that Counsel was ineffective as a result, and we affirm the court's termination order.

BACKGROUND

¶2 Child was born on January 12, 2020. The following day, the Division of Child and Family Services (DCFS) received a referral indicating that Mother tested positive for illegal substances both at the time of Child's birth and during her pregnancy. The referral also reported that Child was Mother's sixth biological child and that Mother had lost custody of her other five children. Thereafter, a DCFS caseworker put a safety plan in place and Child was allowed to leave the hospital and return home with Mother and Child's biological father, G.G. (Father).[1] Approximately one month later, the juvenile court found that Mother had abused Child by using illegal substances during her pregnancy and that Child was a sibling at risk of abuse or neglect. Child was removed from Mother's custody and placed in the custody of DCFS.

¶3 The juvenile court ordered reunification services for Mother. After a year working with her, the court terminated reunification services, finding that Mother had failed to comply with the court's orders and the service plan and to consistently engage in services. The matter proceeded to a termination trial that took place in November 2021.

¶4 Despite having proper notice, Mother failed to appear at the termination trial. Counsel moved to be released due to this failure, and the juvenile court granted Counsel's motion. The trial then proceeded by proffer. At the close of trial, the court entered an order terminating Mother's parental rights, which Mother subsequently appealed. Thereafter, the State, the guardian ad litem (GAL), Mother, and Father filed a stipulated motion for summary reversal, wherein all parties agreed that this first termination trial "failed to comport with due process." This court

---

1. Father's parental rights to Child were terminated at the same time as Mother's. Because this appeal does not concern Father, we recount the facts that relate specifically to Mother.

granted the motion and accordingly vacated the termination order and remanded for a new trial.

¶5 The second termination trial occurred over the course of three days in April 2022. Approximately three weeks before trial, the juvenile court issued an order informing the parties that the trial would be held in person.[2] In the order, the court noted that Mother had made a "request to appear virtually." The court granted the request, stating that Mother "may be allowed to attend virtually if she joins the hearing by video and her video remains on camera throughout the hearing."

¶6 Mother did not appear—virtually or in person—during any part of the three-day termination trial. On the first day of trial, Counsel asked the court for a continuance, arguing that Mother had "a health concern." But Counsel did not provide any additional information or documentation to support this claim, and the court denied the request, finding that Counsel could not establish that a continuance was warranted under rule 54 of the Utah Rules of Juvenile Procedure.

¶7 The trial then proceeded with Father as the first witness. In the middle of Father's testimony, Counsel interrupted and asked the court to be "released." Counsel explained that she was in a "tricky situation . . . attempting to defend a termination petition with no client." The State and the GAL objected to Counsel's request to withdraw. Both parties acknowledged that the withdrawal of counsel in the first termination trial had been

---

2. Prior to the entry of this order, the trial was scheduled to be conducted remotely, in accordance with the Administrative Order for Court Operations During Pandemic. *See* Administrative Order for Court Operations During Pandemic, Utah Supreme Court (June 26, 2020), https://legacy.utcourts.gov/alerts/docs/202 00626%20-%20Amended%20Pandemic%20Administrative%20Or der.pdf [https://perma.cc/9KE8-9U7R].

problematic and that it had likely been a contributing factor in the decision to retry the case.[3] However, the GAL opined that if Counsel complied with the withdrawal process set forth in rule 53 of the Utah Rules of Juvenile Procedure, he would not oppose Counsel's request to withdraw. But when the court questioned Counsel about whether she had complied with the rule 53 requirements, and specifically whether she had informed Mother that she would be withdrawing, she acknowledged that she had not.

¶8      After considering the parties' arguments, the court denied Counsel's motion to withdraw. The court explained that while it understood its decision put Counsel "in a precarious situation," Counsel had not met the criteria to withdraw pursuant to rule 53. The court asked Counsel to "do the best you can," and informed her that the court would "readdress [the request] if there's more information that comes through."

¶9      Counsel appeared without Mother on the remaining two days of trial. At the close of trial, the juvenile court entered a comprehensive order terminating Mother's parental rights to Child.

ISSUE AND STANDARDS OF REVIEW

¶10      Mother now appeals the juvenile court's termination order, asserting that Counsel rendered constitutionally ineffective

---

3. As explained above, the first termination order was vacated based on the parties' stipulated motion for summary reversal. Consequently, the merits of the first termination order were not briefed, and this court's order reversing and remanding did not resolve the merits of the issues raised on appeal. Therefore, while all parties acknowledge that the absence of counsel in the first trial was an issue, there is no appellate decision affirmatively stating that this was the basis for reversal.

assistance because Counsel had a "legal conflict" with Mother. Although Mother frames the issue as an ineffective assistance of counsel claim, her argument mostly implicates the propriety of the juvenile court's decision to deny Counsel's motion to withdraw. "Whether to allow an indigent [party's] attorney to withdraw . . . is a matter committed to the [juvenile] court's sound discretion and will be reversed only for an abuse of discretion." *State v. Scales*, 946 P.2d 377, 381 (Utah Ct. App. 1997). "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *In re S.S.*, 2015 UT App 230, ¶ 20, 360 P.3d 16 (quotation simplified).

ANALYSIS

¶11     Mother argues the juvenile court's refusal to allow Counsel to withdraw after Mother failed to appear for trial gave rise to a conflict of interest between Mother and Counsel that resulted in Mother receiving ineffective assistance of counsel. According to Mother, the court's "erroneous ruling" created a conflict by placing Counsel in a position that required Counsel "to present damaging evidence just to placate [Mother] and demonstrate to the Court [that Counsel] was 'doing her best.'" In essence, Mother's argument raises two questions: (1) whether the juvenile court erred in denying Counsel's motion to withdraw and (2) whether Mother received ineffective assistance of counsel as a result of the court's ruling. Because we conclude the court did not abuse its discretion in denying Counsel's motion to withdraw, we likewise determine that Mother did not receive ineffective assistance because of that decision.

¶12     Motions for appointed counsel to withdraw are governed by rule 53 of the Utah Rules of Juvenile Procedure. That rule provides that "[c]ourt-appointed counsel may not withdraw as counsel of record except upon motion and order of the court." Utah R. Juv. P. 53(b)(2). A motion to withdraw must be made

"either in writing or orally before the court at a hearing" and must include

> (i) A certification from counsel that the represented party has been informed of the motion to withdraw and their right to counsel; and
>
> (ii) A certification from counsel that the represented party has been informed of their rights to appeal, and the availability of post judgment motions and motion to stay pending appeal; or
>
> (iii) The efforts counsel has made to inform the represented party of subsections (c)(1)(i) and (c)(1)(ii).

*Id.* R. 53(c)(1).

¶13   Here, Counsel moved to withdraw shortly after the termination trial began. After listening to the State's and the GAL's opposition to her motion, Counsel admitted to the juvenile court that she could not meet the certification requirements under rule 53(c). Counsel explained that prior to trial, she received a memo indicating that the "main" reason the case had been remanded for a new trial "was the release of counsel" in the first trial. In light of this, Counsel stated, "[I] mention[ed] to [Mother] that it was possible that I would be trying to defend a case, a termination petition without her, without a client. So I have not notified her that the Court would release me." After considering the parties' arguments, the court denied Counsel's motion to withdraw, explaining that Counsel had not made the certifications required under rule 53(c). In addition, the court noted that release under rule 53(b) is discretionary.

¶14   In light of the foregoing, we cannot say the juvenile court abused its discretion in denying Counsel's motion to withdraw. The court explained on the record the reasons for denying the

motion. Importantly, the court found that Counsel had not made the required rule 53(c) certifications supporting the motion, inasmuch as Counsel had admitted that Mother had not been informed that Counsel would be moving to withdraw. Moreover, the court found that even if the proper certifications had been made, the ultimate decision to approve the motion was discretionary with the court. Here, even assuming Counsel could certify that she spoke to Mother about her right to representation and appeal rights, we cannot say that it would have been an abuse of the court's discretion to deny the motion. Among other reasons the court might have exercised its discretion to deny the motion include that the motion was not made until after the start of trial, despite ample notice of the proceedings; that the release of counsel in the first trial was an issue that had likely been a contributing factor in the need for a remand; and that it was Mother's conduct in failing to appear at trial, rather than Counsel's actions, which prompted Counsel to make the motion.[4]

---

4. Mother resists this conclusion, asserting that while rule 53(c) requires "certification" by counsel about certain advisements to the client, this court "must weigh the purpose, practicality and advisability of strict compliance [with rule 53(c)] against the institutional harm of 'setting appointed counsel up' to be forced into the untenable position [Counsel] was placed in this case." But Mother's position ignores that "it is our duty and practice to adhere to the plain language of a rule." *Cougar Canyon Loan, LLC v. Cypress Fund, LLC*, 2020 UT 28, ¶ 13, 466 P.3d 171 (quotation simplified). Because of this, "where an appellant presents compelling reasons for a policy shift that is not currently supported by the plain language of our rules of procedure, we do not rewrite the rule on the fly. Rather, we refer the issue to the appropriate rules committee for additional study, and, if appropriate, we amend the language of the relevant rule through our normal rule-making process." *Id.* ¶ 15 (quotation simplified).

¶15    Notwithstanding the correctness of the juvenile court's denial of Counsel's motion to withdraw, Mother contends the representation Counsel provided to Mother in her absence did not amount to effective assistance. "To establish her ineffective assistance of counsel claim, Mother must show that Counsel's performance was objectively deficient and that Counsel's deficient performance prejudiced the case." *See In re D.G.*, 2022 UT App 128, ¶ 9, 522 P.3d 39 (quotation simplified), *cert. denied*, 527 P.3d 1106 (Utah 2023). Because failure to establish either deficient performance or prejudice is fatal to an ineffective assistance claim, we are free to address Mother's claim under either prong. *See State v. Rosen*, 2021 UT App 32, ¶ 8, 484 P.3d 1225, *cert. denied*, 496 P.3d 714 (Utah 2021). Accordingly, we address only the deficient-performance prong here.

¶16    To demonstrate deficient performance, Mother must persuade this court that, considering the record as a whole, Counsel's performance was objectively unreasonable. *See State v. Scott*, 2020 UT 13, ¶ 36, 462 P.3d 350. But Mother cannot do so here, where Counsel's continued participation at trial comported with the juvenile court's proper denial of Counsel's motion to withdraw and Mother's claim that Counsel's continued representation in her absence harmed her.

¶17    First, Mother was not required to appear at the termination trial. As this court has explained, "there is no absolute statutory or constitutional right to attend the trial in child welfare matters, including termination proceedings." *In re Z.Z.*, 2013 UT App 215, ¶ 20, 310 P.3d 772 (quotation simplified), *cert. denied*, 324 P.3d 640 (Utah 2014). "Notice of the proceedings is alone sufficient to allow a [parent] to exercise the right to be present by appearing, or to waive that right through voluntary absence." *Id.* (quotation simplified). Here, Mother had actual notice of the proceeding. As Mother's appellate counsel concedes, "[t]he [termination] trial commenced with an expectation that [Mother] would sign on as a virtual participant to the hearing." That Mother chose not to

appear may have put her at a disadvantage, but it does not follow that Counsel was ineffective as a result.

¶18   Second, despite Mother's failure to appear at trial, she was still entitled to representation. A parent's right to counsel at a termination trial is statutorily based. *See In re A.E.*, 2001 UT App 202, ¶ 10, 29 P.3d 31; *see also* Utah Code § 78B-22-201(1)(b). To safeguard this right, appointed counsel may be properly waived only if "the record as a whole reflects the parent's reasonable understanding of the proceedings and awareness of the right to counsel." *In re A.B.*, 2017 UT App 99, ¶ 5, 400 P.3d 1107 (per curiam) (quotation simplified); *see also In re A.E.*, 2001 UT App 202, ¶¶ 12–13. Here, Mother did not discuss with the juvenile court any desire to waive her right to counsel, nor did the court engage in a colloquy regarding a potential waiver. On these facts, it would have been inappropriate for the court to conclude that Mother had waived her right to counsel. By requiring Mother to be represented absent a valid waiver, the juvenile court helped to protect Mother's interests in a fair trial. Indeed, even without Mother present, Counsel was present to lodge objections, draw attention to any deficiencies in the State's case, and ensure that Mother's procedural rights were protected.

¶19   Third, and perhaps most notably, this court has already rejected the notion that a party can assert a claim of ineffective assistance where that party "failed to communicate with counsel between the time of the pretrial hearing and the termination trial and failed to appear at the trial." *In re M.L.M.*, No. 20070465-CA, 2007 WL 2446497, at *2 (Utah Ct. App. Aug. 30, 2007) (per curiam). Without client participation, counsel is substantially limited in presenting an effective defense. But this fault lies with the client, not with counsel. And this distinction matters. Indeed, a deficient defense caused by counsel's actions may be grounds for reversal, whereas a mere inability to present the strongest defense— particularly when owing to the client's failure to appear or to assist—does not warrant reversal. And specifically in this

instance, where Mother claims that in order to appease the court rather than protect her client, Counsel allowed negative testimony from Father and called unhelpful and damaging witnesses, Counsel's inability to present the strongest defense was not the fault of Counsel. Even if we were to agree that Counsel's performance at trial was somehow deficient—which we do not—it was Mother's own failure to appear that created the situation.

¶20   In sum, because the juvenile court complied with rule 53 of the Utah Rules of Juvenile Procedure when denying Counsel's motion to withdraw, the court did not abuse its discretion in denying the motion. Further, the court's action in properly denying the motion did not result in Mother receiving ineffective assistance of counsel because it was not objectively unreasonable for Counsel to continue to represent Mother at trial after the juvenile court denied the motion to withdraw and Mother failed to appear for trial.

CONCLUSION

¶21   The juvenile court did not abuse its discretion when it denied Counsel's motion to withdraw, thereby requiring Counsel to represent Mother at trial despite Mother's absence. In denying the motion, the juvenile court adhered to rule 53 of the Utah Rules of Juvenile Procedure, and the decision was therefore not an abuse of the court's discretion. And because Mother has not demonstrated how Counsel's representation was ineffective, nor has she alleged that the juvenile court's termination analysis was flawed in any other respect, we affirm the court's order terminating Mother's parental rights.

———————