**2021 UT 26**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ALARM PROTECTION TECHNOLOGY, LLC,
*Appellee,*

*v.*

NATHAN CRANDALL,
*Appellant.*

No. 20190177
Heard October 14, 2020
Filed July 1, 2021

On Direct Appeal

Third District, Salt Lake
The Honorable Su Chon
No. 170907867

Attorneys:

Erik A. Olson, Jason R. Hull, Trevor C. Lang, Salt Lake City,
for appellee

Kamron Keele, Chicago, IL, for appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court
in which JUSTICE PEARCE joined. CHIEF JUSTICE DURRANT,
JUSTICE HIMONAS and JUSTICE PETERSEN concur with exception to
section III.

JUSTICE PETERSEN authored a concurring opinion
in which CHIEF JUSTICE DURRANT and JUSTICE HIMONAS joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1   This is one of two pending cases in which a sales representative of Alarm Protection Technology (APT) seeks to challenge a set of steps taken by APT to insulate itself from claims for unpaid compensation. The challenged steps include APT's payment of an advance in exchange for the execution of a confession of judgment, the entry of a judgment by confession, the issuance of a writ of execution against the sales representative's

claims for unpaid commissions, APT's purchase of those claims at a constable sale, and APT's substitution as plaintiff on the claims against APT.

¶2    In this case Nathan Crandall asserts that APT's actions illegally and unfairly deprived him of the right to assert his claims for commissions owed to him by APT. Several elements of Crandall's sweeping challenge to APT's "scheme"[1] are not properly presented for our review. The sole questions presented go to the district court's denial of two motions filed by Crandall—his motion to vacate the judgment by confession and quash the writ of execution of his claims, and his motion for return of excess proceeds and unused property from APT's purchase of his claims. We affirm the denial of these motions. In so doing, we reject Crandall's argument that APT was required to establish the value of his claims before executing on them and purchasing them at the constable sale, to presume (absent such proof) that the true value of the claims was established in the allegations of Crandall's complaint, and to return to Crandall excess proceeds or remaining "property" on the basis of those allegations.

I

¶3    Crandall worked as a sales representative for APT from 2012–2014. During that period, he entered into written agreements under which APT agreed to pay him advances against future compensation[2] and Crandall agreed to secure repayment of any unearned advances by executing a promissory note and confession of judgment.[3]

---

[1] We put "scheme" in quotes throughout this opinion to reflect the terminology used in Crandall's briefing. In so doing we recognize that APT objects to the term as a loaded one. And we take no position on the question whether the shoe fits. That question is not presented for our review.

[2] In his briefs on appeal, Crandall asserts that he never received "advances" despite APT's promise to provide them. APT claims that it in fact paid advances even though not required to do so. We do not resolve this conflict because it is not presented for our review and not necessary to our decision.

[3] *See* UTAH R. CIV. P. 58A(i) (providing for entry of "judgment by confession" if "authorized by statute"); UTAH CODE § 78B-5-205

(continued . . .)

¶4    Crandall signed one such agreement in October 2013. Under that agreement, APT agreed to advance Crandall $15,000 and Crandall executed a promissory note and confession of judgment in that amount. Crandall's relationship with APT ended a few months later—in January 2014. And a few years after that, a dispute arose as to the parties' financial obligations to each other.

¶5    In June 2017, Crandall filed an action in Fourth District Court alleging that APT and related parties owed him $143,000 in treble damages for unpaid commissions and were also liable for his attorney fees under the Sales Representative Commission Payment Act, Utah Code §§ 34-44-101–302. Later that year (in December 2017), APT filed the $15,000 confession of judgment (signed by Crandall in 2013) in Third District Court. Crandall's counsel entered an appearance in that court but made no objection to the entry of the judgment by confession. Such judgment was entered in the Third District Court action in January 2018.

¶6    APT then took steps toward collecting on the judgment by confession. In May 2018, it filed an application for a writ of execution, seeking to seize Crandall's claims in the filed Fourth District case and to have them sold at a constable sale. The requested writ described the property as follows:

> All rights, claims, interests, and choses in action that the judgment debtor has in the action entitled *Nathan Crandall v. Alarm Protection Technology, LLC, et al.*, Fourth District Court, Provo, Case No. 170400790, including any claims that could or should have been brought in that action against the defendants including those identified as John Does. Value Unknown.
>
> All rights, claims, interests, and choses in action that the judgment debtor may have against Alarm Protection Technology, LLC, Alder Holdings, LLC, Alder Protection Holdings, LLC, Alarm Protection Alabama, LLC, Alarm Protection Technology Alabama, LLC, Alarm Protection Technology Holdings, LLC, Rhodesian Protection, Adam

(authorizing entry of "judgment by confession . . . without action, either for money due or to become due . . . in the manner prescribed by law").

Schanz, any other entity doing business under the name "Alder" or "Alarm Protection," their subsidiaries, parent companies, members, shareholders, affiliates, officers, principals, employees, agents, attorneys, or staff. Value Unknown.

¶7 Crandall raised no objection to the requested writ and the Third District Court entered it on May 17, 2018. APT then served Crandall with the writ of execution and a notice of constable sale for the property described in the writ, which sale was then held on August 15, 2018. APT appeared at the sale and purchased the claims on a credit bid of $3,500. And it immediately filed a partial satisfaction of judgment, providing an accounting of the sale proceeds and indicating that the $3,500 bid was allocated to constable fees of $327.50, accrued interest on the judgment in the amount of $2,061.88, and $1,110.62 toward the $15,000 judgment.

¶8 APT then filed a motion to substitute itself as the plaintiff in the pending Fourth District Court action filed by Crandall against APT. When that motion was granted, APT extinguished all claims against itself and the other defendants in the case. And the Fourth District Court dismissed all of the claims pending in that action on September 25, 2018.

¶9 Crandall made his first attempt to challenge APT's actions a few months later—when he filed a "motion to vacate the judgment and quash the writ of execution" in the Third District Court proceeding. That motion was filed on December 14, 2018—eleven months after the entry of judgment by confession, seven months after issuance of the writ of execution, and four months after the constable sale. On the same day, Crandall also filed a "motion for return of excess proceeds and unused property from constable sale," asserting that APT was liable to return to him the sum of "just over" $129,000, which he calculated by assigning a $143,000 value to the claims asserted in the Fourth District action (the claims seized under the writ and sold at the constable sale) and subtracting $14,000 owed on the judgment by confession.

¶10 The district court denied both the motion to vacate the judgment and quash the writ of execution and the motion for return of excess proceeds. In denying the first motion the court found that it was "untimely and without justification." First, the court noted that the reasonable time standard for a motion under rule 60(b)(6) of the Utah Rules of Civil Procedure is not a bright line. It then observed that the motion had been filed "eleven

months after the Judgment and seven months after the writ" and noted that Crandall had "been represented by the same counsel since this case was filed" and had "not claimed that he didn't receive copies of the Judgment and Writ." Ultimately, the court concluded that Crandall had provided "no rationale for the delay other than not knowing what a Judgment or Writ means"—"not a reasonable justification" for the delay.

¶11 In denying the motion for return of excess proceeds, the district court concluded that there was no basis for a determination of any "excess." First, the court noted that the certificate of sale (dated August 16) from the constable sale stated that APT's $3,500 credit bid "was the highest bid made and the whole price paid for all right, title, and interest, owned" by Crandall. It also emphasized that the partial satisfaction of judgment (dated August 17) indicated that "the sale proceeds were first applied to the constable fee of $327.50, the accrued interest of $2061.88, and the principal of $1110.62," and that Crandall "still owed a principal amount of $13,899.38."

¶12 Second, the court addressed Crandall's argument that it is somehow "implicit in the requirement to provide an accounting" under rule 69B(e) of the Utah Rules of Civil Procedure that the judgment creditor present "a determination of the exact value" of the property in question "through some proper, informed method of calculation," and Crandall's assertion that "because his lawsuit prayed for $143,000 in damages, $143,000 is the 'value' of the chose in action sold to APT." The court found these positions "untenable" and belied by the text and structure of rule 69B(e), which provides for proceeds to be distributed based on an accounting of the sale of seized property *first* to pay costs of the sale (under subsection (1)), *next* to the plaintiff to satisfy the judgment (under subsection (2)), and *last* to yield any "remaining property and proceeds of the sale" to the defendant (under subsection (3)). Under this structure, the district court held that "[i]f the sales proceeds dry up at any point in the chain, the distribution naturally stops there."

¶13 Finally, the district court also rejected Crandall's "argument that the value of seized property is something other than the sales price at auction." It noted that Crandall had made "much" of that argument but provided "no authority for this position." "While Mr. Crandall believes his lawsuit was worth $143,000," the court noted that "the value (if it went to trial) could be anywhere from $0 to $143,000." "Further," Crandall "could

have protected his rights by bidding above the creditor to protect his lawsuit." But he "did nothing."

¶14  On this record, the court noted that the only evidence of value in the record was APT's credit bid for $3,500. It also emphasized that Crandall "could have responded to the Writ of Execution within 14 days, which he never did."

¶15 Crandall then filed this appeal, asserting a series of objections to APT's "scheme" to "avoid having to defend itself against any claims by its workers" and even "to avoid any way [for workers] to challenge the scheme in court." Crandall asserts that there are substantial "public policy concerns" that foreclose APT's use of a confession of judgment as an instrument for extinguishing claims against it—particularly where the amount paid at the constable sale allegedly was far less than the real value of the claims. And he further contends that his due process rights are infringed by a system that allows APT "to extinguish any action brought against it by its workers by simply jumping through" a series of "procedural hoops"—by obtaining a judgment by confession, securing a writ of execution, acquiring its worker's claims against APT at the constable sale, and then substituting itself as plaintiff in a pending proceeding and extinguishing the worker's claims. Lastly, Crandall insists that APT was "required under Utah law to estimate the value" of the property that was the subject of the writ of execution, and asserts that he is entitled to a payment of "excess proceeds" based on the alleged value of the claims set forth on the face of the complaint in the Fourth District Court ($143,000).

¶16 Some of the sweeping challenges raised in Crandall's brief are not properly presented for our decision. Crandall preserved only two narrow objections in the district court proceedings before us on this appeal—in his motion to vacate the judgment and quash the writ of execution and his motion for return of excess proceeds. And we see no reason to disagree with the district court's decision denying those motions—much less to reverse under the governing standard of review. *See Fisher v. Bybee*, 2004 UT 92, ¶ 7, 104 P.3d 1198 (noting the "broad discretion" afforded to the district court on rule 60(b) decisions because they are typically "equitable in nature"); *Utah Dep't of Transp. v. G. Kay, Inc.*, 2003 UT 40, ¶ 5, 78 P.3d 612 (we review findings of fact for clear error and conclusions of law for correctness).

II

¶17 Crandall preserved only two narrow objections to the APT "scheme" he challenges in his briefing on this appeal—in (a) his motion to vacate the judgment and quash the writ of execution; and (b) his motion for return of excess proceeds. But these motions were untimely and groundless. And our decision to affirm the denial of these motions forecloses some other claims raised in Crandall's briefing.

A

¶18 Crandall styled his first motion as a motion to "vacate the judgment and to quash the writ of execution." And he sought to connect the motion to rule 60(b) of the Utah Rules of Civil Procedure—as a motion for relief from a judgment, order, or proceeding. Crandall cited rule 60(b)(6), a catchall provision for relief for "any other reason that justifies relief." He asserted that the judgment and writ were "against public policy and in violation of [his] constitutional rights of due process." As in his briefs on this appeal, Crandall sought to challenge the general "scheme" by which APT foreclosed his claims in the Fourth District Court case—by inducing him to sign agreements that in his view were void as against public policy, by executing on and purchasing his claims for much less than their true value, and by extinguishing the claims through substitution.

¶19 The district court denied this motion as untimely and unsupported. We affirm that decision. In this motion, Crandall sought to wrap together in a single bundle a wide range of his objections to various steps of APT's process for extinguishing his claims. But many of those objections were effectively aimed at earlier steps in the process, and were forfeited when Crandall failed to raise them at those stages.

¶20 To the extent Crandall was complaining about the judgment by confession, or the enforceability of the agreements that led to such judgment, his motion was an untimely motion for relief from that judgment. As the district court noted, his motion was filed eleven months after the entry of the judgment by confession, and Crandall offered no justification for his failure to challenge the judgment sooner. The motion was thus properly denied as untimely under rule 60(c). *See* UTAH R. CIV. P. 60(c) ("A motion under paragraph (b) must be filed within a reasonable time and for reasons in paragraph (b)(1), (2), or (3), not more than 90 days after entry of the judgment . . . .").

¶21  Crandall's motion was also untimely to the extent it was challenging the propriety of the writ of execution. The motion was filed seven months after the writ of execution was issued. And the district court was accordingly right to conclude that his motion under rule 60(b) was thus not filed within a "reasonable time."[4]

¶22  In resisting this determination on appeal, Crandall asserts that he was not just challenging the "first few steps" in APT's process, but its overarching "scheme." Because that "scheme was only completed upon extinguishment" of Crandall's claims in the Fourth District action, Crandall insists that the date for judging the timeliness of his motion is the date when APT was substituted as plaintiff in the Fourth District Court—on September 25, 2018. And Crandall asserts that he "challenged APT's entire scheme in his Motion to Vacate within a few weeks of extinguishment," and contends that "he could not have done so any earlier"—"the basis for relief (pursuant to rule 60(b) of the Utah Rules of Civil Procedure) only became available . . . after extinguishment in September 2018."

¶23  This is a key premise of Crandall's sweeping challenge to the APT "scheme." But it is both factually mistaken and rooted in a misconception of the nature of our civil process. Our civil rules prescribe specific timelines for objections to orders and proceedings in our courts. As a general rule, objections must be raised *if and when* a party's interests are adversely affected by such orders or proceedings. There is generally no luxury of sitting idly by until the full impact of the order or proceeding comes into full view. That's not how our procedural system is designed.

¶24  Crandall thus forfeited several of the objections he presents on appeal by failing to raise them at earlier stages. Several of his objections were available earlier. He could have challenged the judgment by confession as void as a matter of

---

[4] The parties have treated the timeliness question as a matter governed by the flexible "reasonable time" standard set forth in civil rule 60(b)(6), not the strict 14-day limit for a reply to a writ of execution under civil rule 64E(d). The district court proceeded on the same premise. We accept the premise for the sake of resolving the appeal, but note that the 14-day limit may well control for some 60(b) motions that are rooted in an underlying challenge to a writ of execution.

"public policy" at the time of its entry. And he could have challenged APT's authority to acquire and extinguish his claims when the claims were acquired and extinguished. These objections are procedurally foreclosed because they were not properly preserved.

¶25 In so stating, we are not suggesting that Crandall had a silver bullet available but failed to fire it. In related APT cases we have upheld the above steps against properly preserved challenges raised by other APT sales representatives.[5] With that in mind, Crandall's forfeiture of his objections may ultimately have been harmless. But procedure matters. And we decline to reach the merits of unpreserved issues in our disposition of this case.

B

¶26 Crandall's second motion was a "motion for return of excess proceeds or unused property from constable sale." In advancing this motion Crandall cited rule 64(f)(3) of the Utah Rules of Civil Procedure, which directs the court to "order any remaining property and proceeds of sales delivered to the defendant" upon discharge of a writ, and rule 69B(e), which provides for the "order" in which the property is to be applied under an "accounting" of a constable sale, "up to the amount due or the value of the property, whichever is less." Crandall views the referenced "value" of the property as its "true value." And he deems the judgment creditor's burden of advancing proof of such value to be implicit in the duty to provide an "accounting" of a constable sale. Because APT failed to present such evidence, Crandall asked the district court to presume that the "value" of his claims must have been the amount he placed on them in the complaint filed in the Fourth District ($143,000). And with that in mind, Crandall claimed that there were "excess proceeds" or "remaining property" that he was entitled to receive under civil rule 69B(e).

---

[5] *See Bradburn v. Alarm Prot. Tech., LLC*, 2019 UT 33, ¶¶ 12–14, 449 P.3d 20 (affirming a decision allowing APT to substitute itself for a former sales representative after having purchased the representative's claims against APT while declining to decide whether APT should have been foreclosed from purchasing the claims because that issue was not preserved or presented on appeal).

¶27 The district court denied this motion as both meritless and procedurally barred. We affirm.

1

¶28 Our rules require an applicant for a writ of execution to state "the nature, location and estimated value of the property" that is the subject of a writ of execution. UTAH R. CIV. P. 64E(b)(2). But there is no basis in our rules for a court to assume that the self-serving value placed on the property by its owner is its "true value," and no ground for concluding that the district court was required to determine the availability of "excess proceeds" or "remaining property" on that basis.

¶29 Our rules implicitly—but quite clearly—establish a different mechanism for calculating the value of the property and the availability of "remaining proceeds." Value and proceeds are established under our rules by the amount paid "at auction to the highest bidder." *Id.* 69B(d). This is clear from the requirement that the constable "sell only so much property as is necessary to satisfy the amount due." *Id.* A constable will know the amount due on the judgment and the amount paid by the highest bidder but will have no basis for calculating the "true value" of the sold property. And the requirement to sell only the property "necessary to satisfy the amount due" is thus incompatible with Crandall's position.

¶30 As Crandall has noted, a plaintiff may be required to "deliver an accounting of the sale." *Id.* 69B(e). And rule 69B(e) prescribes the "order" in which the proceeds of the property are to be distributed, "up to the amount due or the value of the property, whichever is less": first to pay the "costs" of the sale, then to pay the plaintiff on the judgment, and last to "deliver to the defendant the remaining property and proceeds of the sale." *Id.* Yet rule 69B(e) yields no basis for treating the referenced "value" as a value established by the plaintiff—much less for assuming that the defendant's own view of its value should control. In context, our rules' reference to "value" is to the market-based indication of value established by our rules—in the amount paid by the "highest bidder" at the constable sale.

¶31 Nowhere do our rules require a judgment creditor to carry a burden of proving the "true" value of property that is subject to a constable sale. And they don't provide for property to be valued based on the self-serving valuation of a judgment debtor. Our rules protect a judgment debtor's interests in other

ways. They allow the judgment debtor to challenge a writ of execution on a "reply" and request for an evidentiary hearing, *id.* 64E(d), to participate in the constable sale, *id.* 69B(d), and to request an accounting and seek "remaining proceeds" or "remaining property," *id.* 69B(e). Our rules are detailed and comprehensive. Because they say nothing about any requirement that the judgment creditor put on evidence of the value of the property, the clear implication is that the judgment debtor is protected in other ways—and that the property is valued (for purposes of the 69B(e) right to "remaining proceeds") not by any kind of evidence that is to be presented prior to the sale but by the purchase price at the constable sale.

¶32 This is confirmed by a body of case law establishing a remedy for setting aside a constable sale. Our cases have long held that a judgment debtor has a right to file a motion to set aside a constable sale under a "sliding scale" showing of "gross inadequacy" of the purchase price and "irregularities during the sale that contributed to the inadequacy of price." *Pyper v. Bond*, 2011 UT 45, ¶¶ 2, 15, 258 P.3d 575; *see also Pender v. Dowse*, 265 P.2d 644, 648 (Utah 1954). The burden of proof falls to the moving party on such motion—the judgment debtor. *See Pyper*, 2011 UT 45, ¶ 2, 19. And that burden is quite incompatible with the burden that Crandall would have us impose on the judgment creditor.

¶33 For these reasons we conclude that there was no substantive basis for Crandall's motion for return of excess proceeds or unused property. The property in question was valued in the manner set forth in our rules—by the amount paid by the "highest bidder" at the constable sale. And based on that value, there were no excess proceeds or unused property to be returned to Crandall.

2

¶34 Crandall failed to avail himself of any of the procedural protections highlighted above. He filed no motion seeking to make a "sliding scale" showing of gross inadequacy and procedural inequity. And he pursued none of the other means of protecting his interests set forth in our rules. Despite receiving notice of a writ of execution describing the subject property and indicating that its value was "unknown" to APT, Crandall filed no reply opposing the writ and made no request for an evidentiary hearing. And despite receiving notice of the constable sale, he did not appear at the sale, or at least did not outbid APT's $3,500 bid for property he says he values at $143,000.

¶35 Crandall did file a motion for return of excess proceeds. But that motion was procedurally misdirected. The motion was rooted in the notion that APT bore a burden of producing evidence of value in support of its writ of execution. Yet Crandall failed to advance that argument at the procedural point at which it was in play—in a reply to the writ of execution.

¶36 For this reason the district court was right to deny Crandall's motion as procedurally barred. There is a fundamental mismatch between the substance of Crandall's argument and the procedural basis for his challenge (and appeal). And that is also fatal to his position.

### III

¶37 Justice Petersen has authored a thoughtful opinion concurring in the above analysis while also identifying grounds for possible amendments to our rules of civil procedure going forward. I commend the concurrence for its careful consideration and analysis of an important set of issues. I decline to concur in the opinion, however, because I prefer to let the rule amendment process play out in the normal course instead of announcing my views in advance in a published opinion.

### IV

¶38 The district court did not err in denying Crandall's motion to vacate the judgment and quash the writ of execution or his motion for return of excess proceeds. We accordingly affirm.

¶39 In so doing, we note that the briefing on this and the other related case has highlighted some points in our rules of procedure that could be framed more clearly, and that might merit further revision to avoid potential pitfalls going forward. With this in mind, we anticipate the need to invite our advisory committee on the civil rules to examine some of the rules at issue in these cases.

¶40 We also deny APT's request for an award of its attorney fees under rule 33(a) of the Utah Rules of Appellate Procedure. Crandall's position fails on its merits. But we see no basis for concluding that it is either "frivolous" or "for delay." And we deny the request for fees on that basis.

JUSTICE PETERSEN, concurring:

¶41  This is one of two companion cases that raise similar legal issues. *See Alarm Prot. Tech. v. Bradburn*, 2021 UT 25. In both cases, I concur in the majority opinion. I agree that there was no error in the district court's denial of the specific motions at issue here. And more generally, it seems that our rules of civil procedure do not prohibit Alarm Protection Technology (APT) from doing what it did in these cases—executing upon its former sales representatives' claims against APT and extinguishing those claims before they could be adjudicated. *See Bradburn v. Alarm Prot. Tech., LLC*, 2019 UT 33, ¶¶ 13–17, 449 P.3d 20; *supra* ¶ 25 ("[W]e are not suggesting that Crandall had a silver bullet available but failed to fire it."). But I write separately because Appellants' arguments, while not successful in this litigation, have persuaded me that we should consider whether our rules *should* permit such a practice.

¶42 In the two related cases involving Appellee APT, Appellants Ryan Bradburn and Nathan Crandall have a number of things in common. Both worked as sales representatives for APT. After leaving their positions, both alleged that APT had failed to pay them commissions they had earned. They both sued APT in the district court under Utah's Sales Representative Commission Payment Act (Commission Act), UTAH CODE §§ 34-44-101–302. But neither of them has had their claims adjudicated on the merits because APT purchased their civil cases and extinguished them.

¶43 APT's ability to effectively immunize itself from these sales representatives' Commission Act claims was the culmination of a series of steps taken by APT, beginning with how APT paid advances to the sales representatives. When APT paid the sales representatives advances against future compensation, it required the sales representatives to sign both a promissory note and a confession of judgment.[6] A confession of judgment is a potent tool for a creditor. It is a written statement, signed and verified by the debtor, that authorizes the creditor to enter judgment against the debtor for a specified sum of money. *Id.* § 78B-5-205; UTAH R. CIV.

---

[6] The Appellants both assert that they did not receive the advances that APT claims it paid them. We have not resolved this dispute because it is not before us.

P. 58A(i). Under Utah law, a creditor can enter a confession of judgment in court "without action."[7] UTAH CODE § 78B-5-205. Once it is signed by the court, the creditor has a judgment against the debtor for the amount due and can then use certain Utah Rules of Civil Procedure to collect on the judgment.

¶44 Here, after Bradburn and Crandall sued APT for unpaid commissions, APT filed in the district court a confession of judgment against each man, signed by them years earlier when they were sales representatives. Specifically, Bradburn filed his suit against APT two years after he stopped selling for them, in March 2017. The same day, APT filed the instant confession of judgment against Bradburn, specifying that he owed the company $24,000 for advances it had paid him in 2013. Crandall also filed suit against APT in 2017, over three years after he stopped selling for them. Within months, APT filed the instant confession of judgment specifying that Crandall owed APT $15,000 for advances it paid him around four years earlier.

¶45 Once APT obtained these judgments against the Appellants, APT quickly turned to the civil rules to begin collection efforts. On the day the court signed the judgment against Bradburn, APT moved for a writ of execution. *See* UTAH R. CIV. P. 64E(a). APT's writ identified Bradburn's Commission Act claim against APT as the property it wished to seize. Under rule 64E, the court granted the writ. Likewise, APT moved for a writ of execution on Crandall's Commission Act claim against APT. That writ was also granted.

¶46 Once a creditor obtains a writ under rule 64E, the civil rules provide for an officer to seize the property on behalf of the creditor. *Id.* 69A. The rules then explain how the property is to be sold at auction. *Id.* 69B. Here, APT attended the auction and purchased Crandall's civil case, in which he alleged $47,876 in unpaid commissions and damages, for a $3,500 credit bid. Through the same process, it purchased Bradburn's civil case, in

---

[7] The statute provides that a "judgment by confession may be entered without action, either for money due or to become due or to secure any person against contingent liability on behalf of the defendant, or both, in the manner prescribed by law. The judgment may be entered in any court having jurisdiction for like amounts." UTAH CODE § 78B-5-205.

which he alleged $348,434 in unpaid commissions, for a $2,500 credit bid.

¶47 Now the owner of the cases against it, APT substituted itself as the plaintiff in both actions. *See id.* 25(c). It then moved to dismiss both cases, which the respective district courts granted, thereby terminating the Commission Act claims against itself.

¶48 In doing so, APT has not violated any civil rule. In fact, we have expressly held that our rules of civil procedure permit judgment creditors to execute upon and extinguish claims against the creditor. We have held in general that a cause of action constitutes "property" upon which a judgment creditor may execute. *See Cougar Canyon Loan, LLC v. Cypress Fund, LLC*, 2020 UT 28, ¶ 12, 466 P.3d 171; *Applied Med. Techs., Inc. v. Eames*, 2002 UT 18, ¶ 13, 44 P.3d 699; *Snow, Nuffer, Engstrom & Drake v. Tanasse*, 1999 UT 49, ¶ 9, 980 P.2d 208. Our reasoning was initially based upon the language of civil rule 69(f), which stated that a sheriff shall "execute the writ [of execution] against the non-exempt property of the judgment debtor by levying on a sufficient amount of property . . . collecting or selling the *choses in action* and selling the other property in the manner set forth herein." *Tanasse*, 1999 UT 49, ¶ 9 (first alteration in original) (emphasis added) (citation omitted); *see also Eames*, 2002 UT 18, ¶¶ 11–13. We defined a "chose in action" as "a claim or debt upon which a recovery may be made in a lawsuit. It is not a present possession, but merely a right to sue; it becomes a 'possessory thing' only upon successful completion of a lawsuit." *Tanasse*, 1999 UT 49, ¶ 9 (quoting *Chose in Action*, BARRON'S LAW DICTIONARY 71 (3d ed. 1991)). We noted that the term "chose in action" in rule 69 was used "without restriction of any sort." *Id.* ¶ 10 (citation omitted). And we therefore viewed "rule 69 to encompass all choses in action." *Id.*

¶49 Rule 69(f), as relied upon in *Tanasse* and *Eames*, no longer exists.[8] However, we have concluded that "choses in action remain amenable to execution" under our current rules. *Cougar Canyon*, 2020 UT 28, ¶ 11 n.7 (citation omitted) (internal quotation

---

[8] Notably, the current language of the corresponding rule of civil procedure no longer references "choses in action." *See* UTAH R. CIV. P. 69A.

marks omitted) (concluding that rules 64 and 64E include choses of action within the "property" subject to a writ of execution).[9]

¶50 We have recognized one exception to this general rule. We have prohibited attorneys and law firms from executing upon former clients' malpractice actions against them. *Tanasse*, 1999 UT 49, ¶ 12 ("[W]e reverse the court of appeals' determination that the very law firm against which a malpractice claim is brought may purchase the cause of action."). We so held for policy reasons, noting that "[t]his question is one that this court is particularly suited to decide, because the public policy concerns at issue closely touch on our regulatory and supervisory responsibilities over the practice of law." *Id.* We observed that allowing a law firm to execute upon a malpractice claim against it had two problems: it effectively denied the plaintiff the right to a trial on his claims, and the appropriate value of the legal malpractice claim would never be fairly determined. *Id.* ¶¶ 13–14. We acknowledged that both problems "are present in every situation in which a judgment creditor seeks to execute on an action pending against it." *Id.* ¶ 15. But we expressly did not address this more general question. *Id.* ¶ 16 n.3.

¶51 We have since declined requests to extend this exception to other circumstances. *See, e.g.*, *Cougar Canyon*, 2020 UT 28, ¶¶ 10–21; *Eames*, 2002 UT 18, ¶¶ 14, 21. Most relevant here, we have held that a judgment creditor may execute upon legal claims pending against the creditor. *Eames*, 2002 UT 18, ¶ 13.[10] We held that such a practice did not violate the open courts clause of the Utah Constitution. *Id.* ¶¶ 15–18. And we concluded that the specific facts of that case did not present a sufficient public policy basis to justify departing from our civil rules. *Id.* ¶ 21.

¶52 Even so, the facts here and in other cases make it difficult to deny the collateral damage done to justice. Here, the very entity

---

[9] "Choses in action" also are not identified as exempt property under Utah statutory law. UTAH CODE § 78B-5-505.

[10] *Eames* also relied upon former rule 69(f). In that case, we reasoned that "[g]iven that choses in action are amenable to execution under rule 69(f), it follows that a defendant can purchase claims, i.e., choses in action, pending against itself and then move to dismiss those claims." *Applied Med. Techs., Inc. v. Eames*, 2002 UT 18, ¶ 13, 44 P.3d 699.

that Appellants accuse of injuring them is able to take over their civil cases and terminate them. It is true that APT has a valid money judgment against both Appellants. But Appellants allege that APT owes them money as well, and they will never receive a fair accounting on the merits.

¶53 Moreover, the statutory scheme enacted by the legislature in the Sales Representative Commission Payment Act is completely thwarted. The Commission Act has specific provisions to ensure that companies (referred to as "principals" in the statute) abide by its terms: It voids any attempt of a principal to require sales representatives to waive their rights under the Act or agree to be bound by the laws of another state, and it provides for triple damages if the principal fails to pay the sales representative earned commissions. UTAH CODE §§ 34-44-104, -301(2). Most importantly, it expressly contemplates situations like the one here, where a sales representative alleges that the principal failed to pay earned commissions, and the principal alleges that the sales representative owes the principal money. *Id.* § 34-44-301(1). In calculating damages under the Commission Act, the sum of unpaid commissions owed to the sales representative is offset by any money the sales representative owes the principal. *Id.* § 34-44-301(2)(a)(ii). The remaining amount, plus attorney fees and court costs, is then tripled and due to the sales representative. *Id.* § 34-44-301(2). Yet rule 64E of the Utah Rules of Civil Procedure, along with APT's use of judgments of confession to pay its sales representatives, has allowed APT to avoid these clear provisions of the Commission Act.

¶54 A federal appellate case provides another example of the damage that can be done to the legal process when judgment creditors execute upon and terminate claims in which they are defendants. In *RMA Ventures California v. SunAmerica Life Insurance Co.*, 576 F.3d 1070 (10th Cir. 2009), the defendants prevailed on summary judgment in the district court. *Id.* at 1071. The plaintiff appealed. *Id.* at 1072. Meanwhile, the district court granted the defendants' motion for attorney fees and entered a corresponding judgment for the defendants of over $87,000. *Id.* The defendants obtained a writ of execution to enforce the judgment. *Id.* Following Utah state procedure, the defendants (through the Salt Lake City Deputy Constable) noticed for sale the plaintiff's right to its pending claims against the defendants, including the plaintiff's right to appeal. *Id.* The defendants purchased the cause of action, and then argued in the Tenth Circuit that the plaintiff no longer had standing because they now

owned the plaintiff's claims. *Id.* at 1072–73. The Tenth Circuit acceded to this argument, but not without remarking that "the circumstances of this case present a degree of discomfort." *Id.* at 1075. Judge Lucero described the problem a bit more forcefully in a separate concurring opinion:

> It is with considerable understatement that the majority acknowledges the "degree of discomfort" presented by this case. . . . By executing on a subsidiary judgment, SunAmerica has extinguished RMA's right to appeal the very merits determination that served as the predicate for the subsidiary judgment in the first place. If we were to reach the merits and reverse the district court's decision, however, there is little doubt that RMA would be entitled to relief from the subsidiary attorneys' fee judgment. . . . RMA will not have the opportunity to pursue its merits appeal . . . . As a matter of public policy, I doubt the wisdom of a rule that readily places the right to appeal on an auction block. More troublesome still is a rule permitting a defendant to purchase its opponent's appellate rights, thereby extinguishing a plaintiff's claim. "[A defendant] obviously has no intention to litigate a claim against itself." Today's decision thus incentivizes Utah defendants to attempt an end run around merits determinations by purchasing a plaintiff's right to appeal. This incentive is at its zenith when it is most offensive—in those cases in which a defendant believes it would likely lose the merits appeal.

*Id.* at 1076–77 (Lucero, J., concurring) (fourth alteration in original) (quoting *Tanasse*, 1999 UT 49, ¶ 13).

¶55 Clearly, permitting judgment creditors to execute upon claims in which they are defendants can result in severe collateral damage to the legal process and the presumption that claims should be fairly adjudicated on the merits. Our rules currently permit this. But we should consider whether our rules should permit such a practice. Judgment creditors like APT have the legal right to a sum of money. We have civil rules to assist them in collecting that money. But the right to collect a sum certain does not include the right to immunity from suit or dismissal of an otherwise valid legal claim against the creditor. We should consider whether our civil rules could be modified to address this

situation in a way that still assists creditors in collecting on judgments, but better protects the legal process from unnecessary harm. I am not pre-judging what the solution might be. I propose only that we refer this issue to our civil rules committee for study and consideration.

———————