**2021 UT 25**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

ALARM PROTECTION TECHNOLOGY, LLC
*Appellee,*

*v.*

RYAN BRADBURN,
*Appellant.*

No. 20190154
Heard October 14, 2020
Filed July 1, 2021

On Direct Appeal

Third District, Salt Lake
The Honorable Keith Kelly
No. 170901374

Attorneys:

Erik A. Olson, Jason R. Hull, Trevor C. Lang, Salt Lake City,
for appellee

Kamron Keele, Chicago, IL, for appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court
in which JUSTICE PEARCE joined. CHIEF JUSTICE DURRANT,
JUSTICE HIMONAS and JUSTICE PETERSEN concur
with exception to section III.

JUSTICE PETERSEN authored a concurring opinion
in which CHIEF JUSTICE DURRANT and JUSTICE HIMONAS joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1    This is one of two pending cases in which a former sales representative of Alarm Protection Technology (APT) seeks to challenge a set of steps taken by APT to insulate itself from claims for unpaid compensation. The challenged steps include APT's payment of an advance in exchange for the execution of a confession of judgment, the entry of a judgment by confession, the issuance of a writ of execution against the sales representative's claims for unpaid commissions, APT's purchase

of those claims at a constable sale, and APT's substitution as plaintiff on the claims against APT.

¶2   In this case, Ryan Bradburn asserts that APT's actions illegally and unfairly deprived him of the right to assert his claims for commissions owed to him by APT. Yet several elements of Bradburn's sweeping challenge to APT's "scheme"[1] are not properly presented for our review. The sole question presented goes to the district court's denial of Bradburn's motion for return of excess proceeds and unused property from APT's purchase of his claims. We affirm the denial of that motion. In so doing, we reject Bradburn's argument that APT was required to establish the value of his claims before executing on them and purchasing them at the constable sale, to presume (absent such proof) that the true value of the claims was established in the allegations of Bradburn's complaint, and to return to Bradburn "excess proceeds" or "unused property" calculated on the basis of those allegations.

I

¶3   Bradburn worked as a sales representative for APT from 2013 to 2015. During that period, he entered into written agreements under which APT agreed to pay him advances against future compensation[2] and Bradburn agreed to secure repayment of any unearned advances by executing a promissory note and confession of judgment.[3]

---

[1] We put "scheme" in quotes throughout this opinion to reflect the terminology used in Bradburn's briefing. In so doing we recognize that APT objects to the term as a loaded one. And we take no position on the question whether the shoe fits. That question is not presented for our review.

[2] In his briefs on appeal, Bradburn asserts that he never received "advances" despite APT's promise to provide them. APT claims that it in fact paid advances. We do not resolve this conflict because it is not presented for our review and not necessary to our decision.

[3] *See* UTAH R. CIV. P. 58A(i) (providing for entry of "judgment by confession" if "authorized by statute"); UTAH CODE § 78B-5-205 (authorizing entry of "judgment by confession . . . without action,
(continued . . .)

¶4 Bradburn signed one such agreement in December 2014. Under that agreement APT agreed to advance Bradburn $24,000 and Bradburn executed a promissory note and confession of judgment in that amount. Bradburn's relationship with APT ended a few months later—in June 2015. And a few years after that a dispute arose as to the parties' financial obligations to each other.

¶5 On March 1, 2017, Bradburn filed an action in Fourth District Court alleging that APT and related parties owed him $348,434 in unpaid commissions and were also liable for treble damages (total damages of $1.1 million) and attorney fees under the Sales Representative Commission Payment Act, Utah Code §§ 34-44-101–302. Later that same day, APT filed the $24,000 confession of judgment (signed by Bradburn in 2013) in Third District Court. Bradburn filed no objection, and a judgment by confession was entered on May 10, 2017.

¶6 APT then took steps toward collecting on the judgment by confession. In May 2017, it filed an application for a writ of execution, seeking to seize Bradburn's claims in the filed Fourth District case and to have them sold at a constable sale. The requested writ described the property as follows:

> a. All rights, claims, interests, and choses in action that the judgment debtor has in the action entitled *Ryan Bradburn v. Alarm Protection Technology, LLC, et al.*, Fourth District Court, Provo, Case No. 170400290. Value Unknown.

> b. All rights, claims, interests, and choses in action that the judgment debtor may have against Alarm Protection Technology, LLC, Alder Holdings, LLC, Alder Protection Holdings, LLC, Adam Schanz, their subsidiary, affiliates, officers, principals, employees, agents, attorneys, or staff. Value Unknown.

¶7 In July 2017, Bradburn filed a motion to quash the requested writ, asserting that APT's "scheme" deprived him of

---

either for money due or to become due . . . in the manner prescribed by law").

due process and that it violated public policy. The district court denied the motion to quash. It concluded that Utah law authorized APT to execute on Bradburn's claims and that doing so was not against public policy. But the court stayed execution of Bradburn's claims to allow him to file a motion to set aside the judgment by confession under rule 60(b) of the Utah Rules of Civil Procedure.

¶8 Bradburn did not appeal the denial of his motion to quash. Instead he filed a motion to vacate the judgment under rule 60(b). In that motion Bradburn asserted various challenges to APT's use of the confession of judgment to acquire his claims. The district court denied the motion to vacate the judgment after a two-day evidentiary hearing. It noted that Bradburn had "acknowledged that he had been given sufficient time to review the promissory note and confession of judgment before he signed them," and "acknowledged, and [APT's] records demonstrated, that he had received at least $24,000 in advancements or expenses paid on his behalf by [APT]." It also found that there was "sufficient evidence to determine that [Bradburn] voluntarily stopped working for [APT] on or about June 5, 2015." And it denied the motion to vacate in light of these determinations.

¶9 Again Bradburn did not appeal, and APT served Bradburn with a notice of constable sale under the writ of execution. After the required publication notice, a constable sale was held on February 20, 2018. APT appeared at the sale and purchased the claims on a credit bid of $2,500. And it then filed a partial satisfaction of judgment, providing an accounting of the sale proceeds and indicating that the $2,500 bid was allocated to constable fees of $497.28 and $2002.72 toward the $24,000 judgment.

¶10 Bradburn sought to challenge this allocation under a "motion for return of excess proceeds and unused property from constable sale." In that motion, Bradburn asserted that APT was liable to return to him the sum of "just under" $1.1 million, which he calculated by assigning a $1.1 million value (the amount pleaded in his complaint) to the claims asserted in the Fourth District action and subtracting the amount owed on the judgment by confession.

¶11 Bradburn withdrew this motion after briefing had already been submitted and just before a scheduled oral argument. But

three months later he refiled an identical motion.[4] The district court denied the renewed motion. It held that Bradburn had identified no basis for his assertion that there were excess "proceeds" or "property" to be delivered to Bradburn after the constable sale. The court based this determination on the only "evidence before the court" of the value of the claims—the certificate of constable sale and the accounting in APT's satisfaction of judgment. Because those documents showed that the claims were purchased for $2,500 and that $497.28 was allocated to costs, the court held that there were "no 'proceeds' left because the judgment was not paid in full" and "there was no 'remaining property [or] proceeds' to deliver to [Bradburn]."

¶12 The district court also rejected Bradburn's attempt to assert objections under the motion for return of proceeds that should have been raised in connection with his earlier motion to quash the writ of execution. It noted that the writ of execution had "listed the estimated value of the property as 'unknown,'" and observed that Bradburn had failed to "challenge the writ on that basis." In fact, the court noted that Bradburn had agreed that the value of his property was "unknown" given that the claims had not been adjudicated. And it concluded that this further supported its denial of Bradburn's motion.

¶13 Lastly, the district court also rejected Bradburn's assertion that either APT or the constable bore some sort of burden to present an expert or other valuation of the property. The court found "nothing in the rules that requires a creditor to hire an expert witness to value property before it is sold." Alternatively, the court emphasized that there was "no evidence in the record" to support Bradburn's assertion that his claims "were worth anywhere near $1 million." The only evidence of value in the record came from the highest bid at the constable sale, and Bradburn had made no showing that he was "entitled to any credit to his judgment other than the $2500 credit bid less the amount kept by the constable for noticing and holding the sale."

¶14 Bradburn then filed this appeal, insisting that APT was "required under Utah law . . . to estimate the value" of the

---

[4] The timeliness of the refiled motion is not presented for our review.

property that was the subject of the writ of execution, and asserts that he is entitled to a payment of "excess proceeds" based on the alleged value of the claims set forth on the face of the complaint in the Fourth District Court ($1.1 million).

¶15 Bradburn preserved only a narrow objection in the district court proceedings before us on this appeal—in his motion for return of excess proceeds. And we see no reason to disagree with the district court's decision denying that motion—much less to reverse under the governing standard of review. *See Utah Dep't of Transp. v. G. Kay, Inc.*, 2003 UT 40, ¶ 5, 78 P.3d 612 (we review findings of fact for clear error and conclusions of law for correctness).

## II

¶16  Bradburn's motion for return of excess proceeds was both procedurally barred and groundless. And our affirmance of the decision to deny it forecloses a range of other claims raised in Bradburn's briefing.

¶17 In advancing his motion for return of excess proceeds, Bradburn cited rule 64(f)(3) of the Utah Rules of Civil Procedure, which directs the court to "order any remaining property and proceeds of sales delivered to the defendant" upon discharge of a writ, and rule 69B(e), which provides for the "order" in which the property is to be applied under an "accounting" of a constable sale, "up to the amount due or the value of the property, whichever is less." Bradburn views the referenced "value" of the property as its "true value." And he deems the judgment creditor's burden of advancing proof of such value to be implicit in the duty to provide an "accounting" of a constable sale. Because APT failed to present such evidence, Bradburn asked the district court to presume that the "value" of his claims must have been the amount he placed on them in the complaint filed in the Fourth District. And with that in mind, Bradburn claimed that there were remaining "proceeds of the sale" of his claims that he was entitled to receive under rule 69B(e).

¶18 The district court denied this motion as either procedurally barred or substantively meritless. The procedural bar holding focused on the fact that the alleged burden to produce evidence of value was ultimately aimed at the writ of execution, not the constable sale. The writ of execution had "listed the estimated value of the property as 'unknown,'" and Bradburn

failed to "challenge that writ on that basis." As to the merits, the district court found "nothing in the rules that requires a creditor to hire an expert witness to value property before it is sold," and no basis in the record for valuing the property at anything other than the successful credit bid of $2,500. We agree with both of these grounds[5] and accordingly affirm.

## A

¶19 Bradburn's motion for return of excess proceeds was procedurally misdirected. The motion was rooted in the notion that APT bore a burden of producing evidence of value in support of its writ of execution. Yet as the district court noted, Bradburn failed to advance that argument at the procedural point at which it was in play—in a reply to or motion to quash the writ of execution.[6] Bradburn did file a motion to quash the writ. But he didn't make this argument in that motion, and in any event he filed no appeal from the denial of that motion.

---

[5] APT has challenged the sufficiency of Bradburn's briefing on the merits, inviting us to affirm on inadequate briefing grounds— on the basis of a determination that Bradburn's briefs presented no "reasoned analysis" supported by any "citations to legal authority." We reject this invitation. Bradburn's legal analysis is admittedly scant. And the absence of analysis rooted in case law certainly cuts against the persuasiveness of Bradburn's position. *See State v. Nielsen*, 2014 UT 10, ¶ 34, 326 P.3d 645 (explaining that our assessment of the adequacy of briefing is simply a "component of our evaluation of the case on its merits"). But Bradburn has cited and argued on the basis of another form of "legal authority"—the language of our rules of civil procedure. Such authority is ultimately unpersuasive, but we decline to resolve the case on the mere basis of inadequate briefing.

[6] Bradburn's challenge to the writ of execution was in a motion to quash. APT raised no objection to the procedural propriety of such motion. It did not assert, for example, that Bradburn was somehow barred because he failed to submit a "reply" to the writ of execution within 14 days under rule 64E(d) of the Utah Rules of Civil Procedure. And this question is likewise not raised in the briefing in this case. For these reasons we do not pursue this question further here.

¶20 For this reason the district court was right to deny Bradburn's motion as procedurally barred. There is a fundamental mismatch between the substance of Bradburn's argument and the procedural basis for his challenge (and appeal). And that is fatal to his position.

B

¶21 Bradburn has also failed to establish a substantive basis for his motion in any event.[7] Nothing in the terms or structure of our rules establishes a burden of a judgment creditor to introduce affirmative proof of the property's "true value." And there is likewise no basis in our rules for a court to assume that the self-serving value placed on the property by its owner is its "true value," and no ground for concluding that the district court was required to calculate the availability of excess proceeds or unused property on that basis.

¶22 Our rules implicitly—but quite clearly—establish a different mechanism for calculating the value of the property and the availability of "remaining proceeds." Value and proceeds are established under our rules by the amount paid "at auction to the highest bidder." UTAH R. CIV. P. 69B(d). This is clear from the requirement that the constable "sell only so much property as is necessary to satisfy the amount due." *Id.* A constable will know the amount due on the judgment and the amount paid by the highest bidder but will have no basis for calculating the "true value" of the sold property. And the requirement to sell only the property "necessary to satisfy the amount due" is thus incompatible with Bradburn's position.

---

[7] Bradburn's appeal seeks to challenge APT's application for the writ of execution on the ground that it failed to give an adequate statement of the "estimated value of the property" to be executed, as required under rule 64E(b)(2) of the Utah Rules of Civil Procedure. But Bradburn preserved no such challenge in the district court. In fact he agreed in the district court that the property value was "unknown." It is not obvious, moreover, how any deficiency in the statement of "unknown" value would affect Bradburn's principal claim that he was entitled to a return of excess proceeds or unused property.

¶23 As Bradburn has noted, a plaintiff may be required to "deliver an accounting of the sale." *Id.* 69B(e). And rule 69B(e) prescribes the "order" in which the proceeds of the property are to be distributed, "up to the amount due or the value of the property, whichever is less": first to pay the "costs" of the sale, then to pay the plaintiff on the judgment, and last to "deliver to the defendant the remaining property and proceeds of the sale."

*Id.* Yet rule 69B(e) yields no basis for treating the referenced "value" as a value established by the plaintiff—much less for assuming that the defendant's own view of its value should control. In context, our rules' reference to "value" is to the market-based indication of value established by our rules—in the amount paid by the "highest bidder" at the constable sale.

¶24 Nowhere do our rules require a judgment creditor to carry a burden of proving the "true" value of property that is subject to a constable sale. And they don't provide for property to be valued based on the self-serving valuation of a judgment debtor. Our rules protect a judgment debtor's interests in other ways. They allow the judgment debtor to challenge a writ of execution on a "reply" and request for an evidentiary hearing, *id.* 64E(d), to participate in the constable sale, *id.* 69B(d), and to request an accounting and seek "remaining proceeds" or "remaining property," *id.* 69B(e). Our rules are detailed and comprehensive. Because they say nothing about any requirement that the judgment creditor put on evidence of value of the property, the clear implication is that the judgment debtor is protected in other ways—and that the property is valued (for purposes of the 69B(e) right to "remaining proceeds") not by any kind of evidence that is to be presented prior to the sale but by the purchase price at the constable sale.

¶25 This is confirmed by a body of case law establishing a remedy for setting aside a constable sale. Our cases have long held that a judgment debtor has a right to file a motion to set aside a constable sale under a "sliding scale" showing of "gross inadequacy" of the purchase price and "irregularities during the sale that contributed to the inadequacy of price." *Pyper v. Bond*, 2011 UT 45, ¶¶ 2, 15, 258 P.3d 575; *Pender v. Dowse*, 265 P.2d 644, 648 (Utah 1954). The burden of proof falls to the moving party on such motion—the judgment debtor. *See Pyper*, 2011 UT 45, ¶ 2, 19. And that burden is quite incompatible with the burden that Bradburn would have us impose on the judgment creditor.

¶26 For these reasons we conclude that there was no substantive basis for Bradburn's motion for return of excess proceeds. The property in question was valued in the manner set forth in our rules—by the amount paid by the "highest bidder" at the constable sale. And based on that value, there were no excess proceeds or unused property to be returned to Bradburn.

¶27 We thus affirm the denial of the motion for return of excess proceeds on two alternative grounds. We find it not just procedurally barred but also without merit.

### III

¶28 Justice Petersen has authored a thoughtful opinion concurring in the above analysis while also identifying grounds for possible amendments to our rules of civil procedure going forward. I commend the concurrence for its careful consideration and analysis of an important set of issues. I decline to concur in the opinion, however, because I prefer to let the rule amendment process play out in the normal course instead of announcing my views in advance in a published opinion.

### IV

¶29 Bradburn has not established a basis for reversal of the district court's decision to deny Bradburn's motion for return of excess proceeds. We affirm on that basis.

¶30 In so doing, we note that the briefing on this and the other related case has highlighted some points in our rules of procedure that could be framed more clearly, and that might merit further revision to avoid potential pitfalls going forward. With this in mind, we anticipate the need to invite our advisory committee on the civil rules to examine some of the rules at issue in these cases.

¶31 We also deny APT's request for an award of its attorney fees under rule 33(a) of the Utah Rules of Appellate Procedure. Bradburn's position fails on its merits. But we see no basis for concluding that it is either "frivolous" or "for delay." And we deny the request for fees on that basis.

———————

JUSTICE PETERSEN, concurring:

¶32 This is one of two companion cases that raise similar legal issues. *See Alarm Prot. Tech. v. Crandall*, 2021 UT 26. In both cases, I concur in the majority opinion. I agree that there was no error in the district court's denial of the specific motions at issue here. And more generally, it seems that our rules of civil procedure do not prohibit Alarm Protection Technology (APT) from doing what it did in these cases—executing upon its former sales representatives' claims against APT and extinguishing those claims before they could be adjudicated. *See Bradburn v. Alarm Prot. Tech., LLC*, 2019 UT 33, ¶¶ 13–17, 449 P.3d 20; *Crandall*, 2021 UT 26, ¶ 25 ("[W]e are not suggesting that Crandall had a silver bullet available but failed to fire it."). But I write separately because Appellants' arguments, while not successful in this litigation, have persuaded me that we should consider whether our rules *should* permit such a practice.

¶33 In the two related cases involving Appellee APT, Appellants Ryan Bradburn and Nathan Crandall have a number of things in common. Both worked as sales representatives for APT. After leaving their positions, both alleged that APT had failed to pay them commissions they had earned. They both sued APT in the district court under Utah's Sales Representative Commission Payment Act (Commission Act), UTAH CODE §§ 34-44-101–302. But neither of them has had their claims adjudicated on the merits because APT purchased their civil cases and extinguished them.

¶34 APT's ability to effectively immunize itself from these sales representatives' Commission Act claims was the culmination of a series of steps taken by APT, beginning with how APT paid advances to the sales representatives. When APT paid the sales representatives advances against future compensation, it required the sales representatives to sign both a promissory note and a confession of judgment.[8] A confession of judgment is a potent tool for a creditor. It is a written statement, signed and verified by the debtor, that authorizes the creditor to enter judgment against the debtor for a specified sum of money. *Id.* § 78B-5-205; UTAH R. CIV. P. 58A(i). Under Utah law, a creditor can enter a confession of

---

[8] The Appellants both assert that they did not receive the advances that APT claims it paid them. We have not resolved this dispute because it is not before us.

judgment in court "without action."[9] UTAH CODE § 78B-5-205. Once it is signed by the court, the creditor has a judgment against the debtor for the amount due and can then use certain Utah Rules of Civil Procedure to collect on the judgment.

¶35 Here, after Bradburn and Crandall sued APT for unpaid commissions, APT filed in the district court a confession of judgment against each man, signed by them years earlier when they were sales representatives. Specifically, Bradburn filed his suit against APT two years after he stopped selling for them, in March 2017. The same day, APT filed the instant confession of judgment against Bradburn, specifying that he owed the company $24,000 for advances it had paid him in 2013. Crandall also filed suit against APT in 2017, over three years after he stopped selling for them. Within months, APT filed the instant confession of judgment specifying that Crandall owed APT $15,000 for advances it paid him around four years earlier.

¶36 Once APT obtained these judgments against the Appellants, APT quickly turned to the civil rules to begin collection efforts. On the day the court signed the judgment against Bradburn, APT moved for a writ of execution. *See* UTAH R. CIV. P. 64E(a). APT's writ identified Bradburn's Commission Act claim against APT as the property it wished to seize. Under rule 64E, the court granted the writ. Likewise, APT moved for a writ of execution on Crandall's Commission Act claim against APT. That writ was also granted.

¶37 Once a creditor obtains a writ under rule 64E, the civil rules provide for an officer to seize the property on behalf of the creditor. *Id.* 69A. The rules then explain how the property is to be sold at auction. *Id.* 69B. Here, APT attended the auction and purchased Bradburn's civil case, in which he alleged $348,434 in unpaid commissions, for a $2,500 credit bid. Through the same process, it

---

[9] The statute provides that a "judgment by confession may be entered without action, either for money due or to become due or to secure any person against contingent liability on behalf of the defendant, or both, in the manner prescribed by law. The judgment may be entered in any court having jurisdiction for like amounts." UTAH CODE § 78B-5-205.

purchased Crandall's civil case, in which he alleged $47,876 in unpaid commissions, for a $3,500 credit bid.

¶38 Now the owner of the cases against it, APT substituted itself as the plaintiff in both actions. *See id.* 25(c). It then moved to dismiss both cases, which the respective district courts granted, thereby terminating the Commission Act claims against itself.

¶39 In doing so, APT has not violated any civil rule. In fact, we have expressly held that our rules of civil procedure permit judgment creditors to execute upon and extinguish claims against the creditor. We have held in general that a cause of action constitutes "property" upon which a judgment creditor may execute. *See Cougar Canyon Loan, LLC v. Cypress Fund, LLC*, 2020 UT 28, ¶ 12, 466 P.3d 171; *Applied Med. Techs., Inc. v. Eames*, 2002 UT 18, ¶ 13, 44 P.3d 699; *Snow, Nuffer, Engstrom & Drake v. Tanasse*, 1999 UT 49, ¶ 9, 980 P.2d 208. Our reasoning was initially based upon the language of civil rule 69(f), which stated that a sheriff shall "execute the writ [of execution] against the non-exempt property of the judgment debtor by levying on a sufficient amount of property . . . collecting or selling the *choses in action* and selling the other property in the manner set forth herein." *Tanasse*, 1999 UT 49, ¶ 9 (first alteration in original) (emphasis added) (citation omitted); *see also Eames*, 2002 UT 18, ¶¶ 11–13. We defined a "chose in action" as "a claim or debt upon which a recovery may be made in a lawsuit. It is not a present possession, but merely a right to sue; it becomes a 'possessory thing' only upon successful completion of a lawsuit." *Tanasse*, 1999 UT 49, ¶ 9 (quoting *Chose in Action*, BARRON'S LAW DICTIONARY 71 (3d ed. 1991)). We noted that the term "chose in action" in rule 69 was used "without restriction of any sort." *Id.* ¶ 10 (citation omitted). And we therefore viewed "rule 69 to encompass all choses in action." *Id.*

¶40 Rule 69(f), as relied upon in *Tanasse* and *Eames*, no longer exists.[10] However, we have concluded that "choses in action remain amenable to execution" under our current rules. *Cougar Canyon*, 2020 UT 28, ¶ 11 n.7 (citation omitted) (internal quotation marks

_____

[10] Notably, the current language of the corresponding rule of civil procedure no longer references "choses in action." *See* UTAH R. CIV. P. 69A.

omitted) (concluding that rules 64 and 64E include choses of action within the "property" subject to a writ of execution).[11]

¶41 We have recognized one exception to this general rule. We have prohibited attorneys and law firms from executing upon former clients' malpractice actions against them. *Tanasse*, 1999 UT 49, ¶ 12 ("[W]e reverse the court of appeals' determination that the very law firm against which a malpractice claim is brought may purchase the cause of action."). We so held for policy reasons, noting that "[t]his question is one that this court is particularly suited to decide, because the public policy concerns at issue closely touch on our regulatory and supervisory responsibilities over the practice of law." *Id.* We observed that allowing a law firm to execute upon a malpractice claim against it had two problems: it effectively denied the plaintiff the right to a trial on his claims, and the appropriate value of the legal malpractice claim would never be fairly determined. *Id.* ¶¶ 13–14. We acknowledged that both problems "are present in every situation in which a judgment creditor seeks to execute on an action pending against it." *Id.* ¶ 15. But we expressly did not address this more general question. *Id.* ¶ 16 n.3.

¶42 We have since declined requests to extend this exception to other circumstances. *See, e.g.*, *Cougar Canyon*, 2020 UT 28, ¶¶ 10–21; *Eames*, 2002 UT 18, ¶¶ 14, 21. Most relevant here, we have held that a judgment creditor may execute upon legal claims pending against the creditor. *Eames*, 2002 UT 18, ¶ 13.[12] We held that such a practice did not violate the open courts clause of the Utah Constitution. *Id.* ¶¶ 15–18. And we concluded that the specific facts of that case did not present a sufficient public policy basis to justify departing from our civil rules. *Id.* ¶ 21.

---

[11] "Choses in action" also are not identified as exempt property under Utah statutory law. UTAH CODE § 78B-5-505.

[12] *Eames* also relied upon former rule 69(f). In that case, we reasoned that "[g]iven that choses in action are amenable to execution under rule 69(f), it follows that a defendant can purchase claims, i.e., choses in action, pending against itself and then move to dismiss those claims." *Applied Med. Techs., Inc. v. Eames*, 2002 UT 18, ¶ 13, 44 P.3d 699.

¶43 Even so, the facts here and in other cases make it difficult to deny the collateral damage done to justice. Here, the very entity that Appellants accuse of injuring them is able to take over their civil cases and terminate them. It is true that APT has a valid money judgment against both Appellants. But Appellants allege that APT owes them money as well, and they will never receive a fair accounting on the merits.

¶44 Moreover, the statutory scheme enacted by the legislature in the Sales Representative Commission Payment Act is completely thwarted. The Commission Act has specific provisions to ensure that companies (referred to as "principals" in the statute) abide by its terms: It voids any attempt of a principal to require sales representatives to waive their rights under the Act or agree to be bound by the laws of another state, and it provides for triple damages if the principal fails to pay the sales representative earned commissions. UTAH CODE §§ 34-44-104, -301(2). Most importantly, it expressly contemplates situations like the one here, where a sales representative alleges that the principal failed to pay earned commissions, and the principal alleges that the sales representative owes the principal money. *Id.* § 34-44-301(1). In calculating damages under the Commission Act, the sum of unpaid commissions owed to the sales representative is offset by any money the sales representative owes the principal. *Id.* § 34-44-301(2)(a)(ii). The remaining amount, plus attorney fees and court costs, is then tripled and due to the sales representative. *Id.* § 34-44-301(2). Yet rule 64E of the Utah Rules of Civil Procedure, along with APT's use of judgments of confession to pay its sales representatives, has allowed APT to avoid these clear provisions of the Commission Act.

¶45 A federal appellate case provides another example of the damage that can be done to the legal process when judgment creditors execute upon and terminate claims in which they are defendants. In *RMA Ventures California v. SunAmerica Life Ins. Co.*, 576 F.3d 1070 (10th Cir. 2009), the defendants prevailed on summary judgment in the district court. *Id.* at 1071. The plaintiff appealed. *Id.* at 1072. Meanwhile, the district court granted the defendants' motion for attorney fees and entered a corresponding judgment for the defendants of over $87,000. *Id.* The defendants obtained a writ of execution to enforce the judgment. *Id.* Following Utah state procedure, the defendants (through the Salt Lake City Deputy Constable) noticed for sale the plaintiff's right to its

pending claims against the defendants, including the plaintiff's right to appeal. *Id.* The defendants purchased the cause of action, and then argued in the Tenth Circuit that the plaintiff no longer had standing because they now owned the plaintiff's claims. *Id.* at 1072–73. The Tenth Circuit acceded to this argument, but not without remarking that "the circumstances of this case present a degree of discomfort." *Id.* at 1075. Judge Lucero described the problem a bit more forcefully in a separate concurring opinion:

> It is with considerable understatement that the majority acknowledges the "degree of discomfort" presented by this case. . . . By executing on a subsidiary judgment, SunAmerica has extinguished RMA's right to appeal the very merits determination that served as the predicate for the subsidiary judgment in the first place. If we were to reach the merits and reverse the district court's decision, however, there is little doubt that RMA would be entitled to relief from the subsidiary attorneys' fee judgment. . . . RMA will not have the opportunity to pursue its merits appeal . . . . As a matter of public policy, I doubt the wisdom of a rule that readily places the right to appeal on an auction block. More troublesome still is a rule permitting a defendant to purchase its opponent's appellate rights, thereby extinguishing a plaintiff's claim. "[A defendant] obviously has no intention to litigate a claim against itself." Today's decision thus incentivizes Utah defendants to attempt an end run around merits determinations by purchasing a plaintiff's right to appeal. This incentive is at its zenith when it is most offensive—in those cases in which a defendant believes it would likely lose the merits appeal.

*Id.* at 1076–77 (Lucero, J., concurring) (fourth alteration in original) (quoting *Tanasse*, 1999 UT 49, ¶ 13).

¶46 Clearly, permitting judgment creditors to execute upon claims in which they are defendants can result in severe collateral damage to the legal process and the presumption that claims should be fairly adjudicated on the merits. Our rules currently permit this. But we should consider whether our rules should permit such a practice. Judgment creditors like APT have the legal right to a sum of money. We have civil rules to assist them in

collecting that money. But the right to collect a sum certain does not include the right to immunity from suit or dismissal of an otherwise valid legal claim against the creditor. We should consider whether our civil rules could be modified to address this situation in a way that still assists creditors in collecting on judgments, but better protects the legal process from unnecessary harm. I am not pre-judging what the solution might be. I propose only that we refer this issue to our civil rules committee for study and consideration.

———————